## In re Anonymous No. 67 D.B. 89

Disciplinary Docket No. 67 D.B. 89.

LIEBER, *Member,* July 29, 1991—

### HISTORY OF PROCEEDINGS

On July 6, 1989, the Office of Disciplinary Counsel filed a petition for discipline of respondent. The petition, which contained two separate charges of misconduct, alleged that respondent neglected entrusted legal matters and failed to fulfill his professional obligations to clients.

On December 18 and 19, 1989, the parties entered into two stipulations concerning the underlying facts upon which the petition for discipline was based and the evidence which corroborated the facts.

The matter was referred to Hearing Committee [ ], which was chaired by [ ], Esquire, and included [ ], Esquire, and [ ], Esquire. The committee held hearings on the matter on December 19, 1989, and May 4, 1990. On April 9, 1991, the hearing committee filed its report, and recommended that respondent receive an informal admonition.

On May 1, 1991, respondent filed exceptions and a brief in support of his exceptions to the hearing committee report.

The Office of Disciplinary Counsel filed a brief opposing respondent's exceptions on May 16, 1991.

The matter was adjudicated at the May 30, 1991, meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

We make the following findings of fact.

(1) Petitioner, whose principal office is located at 300 North Second Street, Commerce Building, Third Floor, Harrisburg, Pennsylvania, 17101, is vested, under Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement (Pa.R.D.E.), with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to practice in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rule.

(2) Respondent, [ ], Esquire, was born in 1944, admitted to practice law in the Commonwealth of Pennsylvania in 1974, and his office is located at [ ].

## CHARGE I

(3) In 1984, due to delinquent water and sewage bill payments, the city of [A] (hereinafter, [A]) initiated a tax sale at which it auctioned off [B's] property to [C] (hereinafter, purchaser).

(4) In October 1985, [B] (hereinafter, client) retained respondent to represent him in this real estate matter.

(a) The client requested that respondent institute a quiet title action to cancel the deed conveying title to aforementioned property transferred from [A] to the purchaser.

(b) The client requested that respondent institute a second action against [D] Savings and Loan As-

sociation (hereinafter, [D]), the client's mortgagee, for failing to notify him of the impending sale.

(5) On or about March 3, 1986, the client conveyed a $120 check to respondent for the cost of filing the two complaints.

(6) On March 25, 1986, respondent caused to be filed:

(a) A complaint on behalf of the client against [D] in [ ] County, docketed at [ ]; and

(b) An action to quiet title on behalf of the client against [A] and the purchaser in [ ] County, docketed at [ ].

(7) On May 23, 1986, respondent initiated reinstatement of the complaint involving the quiet title action against [A] and the purchaser.

(8) In regard to the quiet title action:

(a) Representatives of [A] were served with the complaint on June 3, 1986; and

(b) The purchaser was served with the complaint on June 4, 1986.

(9) On June 6, 1986, [D] was served with the complaint involving their failure to notify the client of the impending tax sale.

(10) By letter dated July 3, 1986, attorney [E], counsel for [D], forwarded to respondent preliminary objections, as well as his brief in support thereof which had been filed, and informed respondent that argument on the preliminary objections was scheduled for July 30, 1986. It was [D's] position in the preliminary objections that a demurrer should be granted since [D], as mortgagee, owed no duty to the client to notify him of the tax sale.

(11) By letter dated July 8, 1986, respondent forwarded to the client copies of the documents he had received from [E] and indicated that he could amend the complaint or argue the preliminary objections.

(12) On or about July 9, 1986, respondent spoke with the client, at which time the client instructed respondent to prepare a brief and argue the preliminary objections.

(13) In late July 1986, respondent replied to [D's] preliminary objections and argued the motion before Judge [F], which resulted in dismissal of the preliminary objections without prejudice by order of court dated July 30, 1986.

(14) By letter dated August 7, 1986, respondent sent the client an itemized bill, showing a balance due of $1,049.88 (beyond the total of $620 previously paid him).

(15) On September 29, 1986, [D] filed an answer to the complaint.

(16) On February 12, 1987, the client executed a check in the amount of $200 to respondent.

(17) By letter dated March 13, 1987, respondent informed the client that it was necessary to reschedule an argument, involving the quiet title action against [A] and the purchaser to March 27, 1987, due to defendant's failure to reply to the complaint. That letter also informed the client that:

(a) The rescheduling was necessary due to scheduling difficulties on his part;

(b) Respondent would make "every conceivable effort" to finalize the case as soon as possible;

(c) Respondent had devoted a considerable amount of time to the case for which he had not been paid; and

(d) Respondent was willing to make "some sort of arrangement to work through those difficulties."

(18) The oral argument involving [A] and the purchaser case did not materialize on March 27, 1987, or at any time thereafter while respondent represented the client.

(19) In or about April 1987, after numerous attempts to settle the differences between respondent and the client concerning respondent's fees, [G] suggested that a written agreement be entered into, obligating both parties to perform activities satisfactory to each other.

(20) On April 20, 1987, respondent and the client executed two separate written agreements, both witnessed by [G].

(a) One agreement involved the quiet title action against [A] and the purchaser. Under said agreement:

(i) Respondent agreed to "proceed with the case of [B], my client, and to bring the case to a conclusion as soon as possible within the legal system."

(b) The second agreement between respondent and the client involved the case against [D]. Under said agreement:

(i) Respondent agreed to perform legal services on the client's behalf at the rate of $100 per hour;

(ii) Respondent agreed to consult with the client as to the conduct of the litigation in "matters, pre-trial discovery, settlement and other matters;" and

(iii) The client agreed to pay respondent on a monthly basis as the litigation progressed and pay all costs in advance.

(21) Respondent issued a motion for judgment pursuant to Rule Pa.R.C.P. 1066.

(22) On June 20, 1987, the client executed a $400 check payable to respondent.

(23) In or about July 1987, [G] visited respondent's office without an appointment. The client's retention of another attorney was discussed.

## CHARGE II

(24) On or about June 11, 1986, [H], while incarcerated at the State Correctional Facility at [ ], filed two civil actions, pro se, against prison officials, in the U.S. District Court for the [ ] District of Pennsylvania, alleging that his civil rights were violated while he was incarcerated.

(a) One action was docketed at no. [ ] and involved his claim that he was injured by prison employees obstructing and destroying court records which he had attempted to mail.

(b) The second action was docketed at no. [ ] and involved his claim that he was denied due process, in that he was placed in solitary confinement because prison officials found him guilty of the unauthorized use of drugs, based solely upon a urine sample used without his consent.

(25) [H] (hereinafter, client) retained respondent to represent him on behalf of these federal proceedings.

(26) As to the federal action at no. [ ]:

(a) On or about July 28, 1986, the client filed a copy of his letter to respondent, informing respondent of his notifying the District Court of respondent's representation of him.

(b) On or about August 15, 1986, respondent filed the client's pre-trial narrative statement docketed at no. [ ].

(c) On October 7, 1986, respondent appeared on behalf of the client for a status conference.

(d) On October 9, 1986, Federal Magistrate [I] entered an order directing, in part, that the client file an amended complaint by October 24, 1986, a copy of which order was distributed to respondent.

(e) On January 21, 1986, [J], deputy attorney general, filed a motion for summary judgment regarding the action docketed at no. [ ].

(f) Respondent failed to file the amended complaint until May 13, 1987.

(g) On January 21, 1987, the defendants filed a motion for summary judgment, alleging therein that there were no material issues of fact in dispute.

(h) On January 26, 1987, Magistrate [I] entered an order directing, in part, that the client be allowed until March 9, 1987, to respond to the motion for summary judgment, a copy of which order was mailed to respondent.

(i) On February 7, 1987, the client filed an appearance regarding the action docketed at no. [ ].

(j) On or about February 10, 1987, the client notified the court that he wanted to proceed pro se.

(k) On March 25, 1987, a conference was assembled before Magistrate [I] regarding the status of representation of the client.

(i) Respondent failed to appear for the status conference.

(ii) Respondent failed to request a continuance of the conference.

(27) On April 2, 1987, Magistrate [I] issued a memorandum order regarding the actions filed at nos. [ ] and [ ].

(28) As to federal action at no. [ ]:

(a) On July 15, 1986, the defendants filed a motion to dismiss, alleging therein that the client failed to state a claim upon which relief can be granted.

(b) On August 28, 1986, respondent made an appearance on behalf of the client.

(c) On October 7, 1986, respondent appeared on behalf of the client at a hearing, involving the defendants' motion to dismiss.

(i) At that time, respondent was granted leave to amend the complaint.

(ii) Magistrate [I] issued an order on October 9, directing, in part, that the client file an amended complaint on or before October 24, 1986.

(d) Respondent then failed to file the amended complaint by October 24, 1986, or any time thereafter.

(e) On December 18, 1986, a report and recommendation was filed by Magistrate [I], recommending that the defendants' motion to dismiss be granted on the basis that the client's complaint failed to state any claim upon which relief could be granted.

(i) A copy of the report and recommendation was served upon respondent and he was given 10 days from the date of service to file objections.

(ii) Respondent failed to file such objections.

(f) On January 27, 1987, District Court Judge [K] entered an order granting defendants' motion to dismiss, as no objections to the report had been filed, and adopting Magistrate [I's] report and recommendation as the opinion of the court.

(g) On February 6, 1987, the client filed, on his own behalf, a motion for reconsideration of the dismissal, asserting, in part, that respondent had failed to communicate with him concerning the developments in the case, failed to provide him with copies of documents served by the court or the defendants, and failed to properly represent him.

(h) On February 7, 1987, the client filed an appearance.

(i) On or about February 10, 1987, the client notified the court that he wanted to proceed pro se.

(j) On February 19, 1987, Judge [K] entered an order rescinding the order of January 27, 1987, and referring the action back to Magistrate [I] for pretrial proceedings.

(k) On February 23, 1987, Magistrate [I] entered an order directing, in part, that the client file an amended complaint on or before March 9, 1987, a copy of which order was dispatched to respondent.

(l) On March 4, 1987, the client filed an amended complaint, pro se.

(m) On or about March 12, 1987, the defendants filed a motion to dismiss.

(n) The client filed a motion for summary judgment.

(29) On April 1, 1987, after reviewing respondent's involvement in both case no. [ ] and no. [ ], Magistrate [I] issued a memorandum order wherein:

(a) A rule was issued upon respondent to:

(i) Show cause why he should not be cited to the District Court for contempt for failure to comply with orders of the court; and

(ii) Show cause why he should not be reported to the Disciplinary Board of the Supreme Court of Pennsylvania for failing to represent the client adequately in these two federal cases;

(b) A hearing on the matter was scheduled for April 15, 1987.

(30) On about April 7, 1987, the client, pro se, filed a motion for summary judgment concerning case no. [ ].

(31) On April 15, 1987, the contempt hearing was held before Magistrate [I], which respondent attended. At the hearing:

(a) Respondent advised Magistrate [I] that he desired to continue representing the client.

(b) The client advised Magistrate [I] that he desired to have respondent continue to represent him.

(c) Magistrate [I] permitted respondent to continue representing the client and directed that all orders and pleadings be served on both respondent and the client.

(d) Magistrate [I] did not cite respondent for contempt but informed him that she would notify the Disciplinary Board about questions raised in the case.

(32) By an April 21, 1987, order, Magistrate [I] directed, in part, that:

(a) Copies of all orders and other pleadings and documents filed in the case be served upon the client and respondent, with the copies to be served upon respondent by certified mail;

(b) As to case no. [ ], the client shall file a brief in support of his motion for summary judgment by May 13, 1987, and defendants shall file a brief in support of their motion to dismiss by May 13, 1987; and

(c) As to case no. [ ], the client shall be permitted until May 13, 1987, to file an amended complaint or respond to defendant's motion for summary judgment.

(33) On or about May 13, 1987, respondent filed an amended complaint on the client's behalf as to case no. [ ].

(34) On or about May 15, 1987, respondent filed petitions to withdraw as counsel, concerning both of the client's federal actions at no. [ ] and [ ].

(35) By orders of court dated May 21, 1987, Magistrate [I] granted respondent's request for leave to withdraw as counsel in both of the client's federal actions.

(36) It is alleged as to the client's action filed at no. [ ], respondent:

(a) Failed to file the amended complaint until about May 13, 1987; and

(b) Failed to file a motion to withdraw as client's counsel until May 15, 1987.

(37) It is alleged that as to client's civil rights action at no. [ ], respondent:

(a) Failed to file the amended complaint;

(b) Failed to file a response to the defendants' motions to dismiss which was filed on March 12, 1987.

(c) Failed to file a motion to withdraw as the client's counsel until May 15, 1987.

## CONCLUSIONS OF LAW

The Office of Disciplinary Counsel has failed 'to sustain the burden of proving attorney misconduct by a clear and satisfactory preponderance of evidence.

## DISCUSSION

The preliminary issue in any disciplinary proceeding involving alleged Disciplinary Rule violations premised upon the respondent's conduct is whether petitioner has sustained its burden of proving professional misconduct. It is incumbent upon the Office of Disciplinary Counsel to prove unprofessional conduct by a preponderance of clear and satisfactory evidence. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986).

We note from the outset that Hearing Committee [ ] recommended dismissal of Charge II of the petition for discipline on the grounds that respondent's failure to comply with court directives in his representation of [H] may have been based upon a number of reasons: "strategy, professional judgment or the lack of a factual basis." This conclusion is supported by respondent's testimony.

Because the gravamen of Charge II was that respondent engaged in misconduct when he failed to make what he, in his professional judgment, deemed were unsupported, meritless filings, the hearing

committee was called upon to assess the validity of respondent's strategical judgments.

We are in total agreement with the hearing committee that the record amply demonstrates that respondent may have failed to make the strategic moves which petitioner deems misconduct because it was his professional assessment that he should not press a case which lacked merit. It is within respondent's province as a licensed member of the Pennsylvania bar to determine whether a case lacks merit and to proceed accordingly. We decline to find respondent guilty of misconduct merely because he pursued a course of conduct contrary to petitioner's notion of the appropriate action to be taken on behalf of [H].

Similarly, the first charge in the petition for discipline also concerns a discretionary question involving respondent's style of practice. We believe that this, too, is inappropriate for the board's consideration. Charge I is essentially a fee dispute between respondent and his former client, [B]. Respondent and [B] executed a contract whereby legal services were to be furnished in exchange for payment. The record demonstrates that a legitimate fee dispute arose over the question of whether respondent should be expected to provide legal services for a client who had agreed to tender payment on a certain schedule and then reneged on the deal.

To make the leap, as advocated by the Office of Disciplinary Counsel, from a bona fide fee dispute to neglect of an entrusted legal matter and failure to fulfill a professional service contract, is a distance too far for this board to travel. It is within an individual attorney's prerogative to enter into professional services contracts with terms he deems in the best interests of his clients and his practice. We are, however, in no way sanctioning an attorney's

entry into unconscionable contracts or suggesting that the manner in which an attorney practices law is outside the realm of disciplinary action in Pennsylvania.

Rather, we are merely protecting the attorney's right to use some discretion in the manner in which he practices law. We are confident that where the practitioner abuses this privilege, his misconduct will be proven by a clear and satisfactory preponderance of the evidence.

## DETERMINATION

The Disciplinary Board of the Supreme Court of Pennsylvania determines, based upon the foregoing findings and discussion, that the petition for discipline be dismissed.

Messrs. Eckell, Hill, Leonard and Sloane did not participate in the adjudication.

## ORDER

And now, July 29, 1991, upon consideration of the report and recommendation of Hearing Committee [ ] filed April 9, 1991; it is hereby ordered that the charges against [respondent], docketed at No. 67 D.B. 89, be dismissed.